**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
PO BOX 1352
NEWARK, NJ 07101-1352
(973) 645-2464

NOVALYN L. WINFIELD
BANKRUPTCY JUDGE

March 18, 2014

David L. Stevens, Esq.
SCURA, WIGFIELD, HEYER & STEVENS LLP
1599 Hamburg Turnpike
Wayne, New Jersey 07470

Susan S. Long, Esq.
The Law Offices of Susan S. Long
140 East Ridgewood Avenue
Suite 415
Paramus, NJ 07652

       RE:  **Richard Michael Vorel**
           Case No.: 13-30747 (NLW)
           Letter Opinion - NOT FOR PUBLICATION

Dear Counsel:

  This matter was brought before the court by counsel for Jenny Malkin ("Ms. Malkin") on a motion to dismiss this Chapter 7 case pursuant to Section 707(b)(1) as a substantial abuse of the Bankruptcy Code. The motion is premised on Ms. Malkin's contentions that (i) the income of Richard Vorel ("Debtor") exceeds the applicable median family income, (ii) the Debtor is actually able to pay his unsecured non-priority creditors some part of what they are owed, and (iii) the Debtor did not accurately complete the Means Test, thus obscuring his ability to pay creditors. Counsel for the Debtor objected to the motion on the ground that it was not timely filed. After reviewing the available facts and the law, the court agrees with the Debtor that the motion was not timely filed.

### BACKGROUND

  The Debtor's Chapter 7 case was filed on September 23, 2012. Ms. Malkin appeared at the Debtor's Section 341(a) Meeting of Creditors held on October 21, 2013 and questioned the Debtor regarding his financial affairs. Thereafter, on December 20, 2013, just prior to the expiration of the

1

deadline to file a motion to dismiss based on substantial abuse, counsel for the Debtor and Ms. Malkin's counsel, David Stevens ("Mr. Stevens"), entered into a consent order that enlarged the time to file an objection to discharge or dischargeability, or to file a motion to dismiss ("First Consent Order"). The First Consent Order extended the deadlines from December 20, 2013 to January 20, 2014.

Just prior to expiration of the deadlines in the First Consent Order, Virginia Fortunato ("Ms. Fortunato") was substituted as Debtor's counsel, and it appears that she and Mr. Stevens engaged in settlement negotiations and discussion regarding a further extension of the deadlines contained in the soon to expire First Consent Order. It appears from the exhibits attached to the motion papers and the opposition papers that Mr. Stevens emailed a proposed consent order to Ms. Fortunato extending the deadlines to February 20, 2014. By return email dated January 20, 2014, Ms. Fortunato returned the proposed consent order with the deadline changed to January 28, 2014. The text of Ms. Fortunato's email stated that the Debtor had "… authorized a very brief extension until next Tuesday," and that "I am not authorized to extend beyond that point." This consent order ("Second Consent Order") was forwarded to the court and entered on January 21, 2014.

The email thread between Mr. Stevens and Ms. Fortunato also reveals (i) further settlement discussions between counsel on January 20, 2014 that were not successful, (ii) an inquiry from Mr. Stevens on January 23, 2014 as to whether conversion would occur without him having to make a motion, and (iii) Ms. Fortunato's reply on January 27, 2014 stating as follows: "Please be advised my client has retained me to convert his case to a Chapter 13." Subsequently, also on January 27, 2014, Mr. Stevens further inquired as to whether the motion would be filed by January 28, 2014, to which Ms. Fortunato responded as follows: "I am trying not sure I can pull it off though as my schedule is really tight." No further email exchanges have been provided to the court, and no affidavits have been filed that describe any further discussions between Mr. Stevens and Ms. Fortunato. However, it appears that on or about January 29, 2014, Ms. Fortunato and the Debtor executed a consent order to substitute another attorney to represent the Debtor, and on February 3, 2014, Susan Long ("Ms. Long") filed a Notice of Appearance.

Mr. Stevens states that he understood Ms. Fortunato's statement on January 27, 2014 to be a representation that the Debtor's case would be converted and that he relied on that statement. He further states that when the conversion motion was not filed, he filed the motion to dismiss as a precaution, expecting to withdraw it when the conversion motion was filed. In his response to Ms. Long's opposition to his motion to dismiss, Mr. Stevens claims that Ms. Fortunato's conduct misled him into believing that it was unnecessary for him to file a motion to dismiss. He additionally states that "when a colleague that I practice with frequently leads me to believe one thing only to use my reliance against me later, equity should intervene." Furthermore, Mr. Stevens argues that the court should employ the equitable tolling doctrine so that his motion to dismiss may be considered as timely. On behalf of the Debtor, Ms. Long points out that at the end of the second extension, Ms. Malkin and her counsel had been afforded approximately 98 days to file the motion to dismiss. Moreover, Ms. Long notes that in her January 28, 2014 email, Ms. Fortunato advised Mr. Stevens that it was questionable whether a motion could be filed before the deadline in the Second Consent Order expired.

## DISCUSSION

Pursuant to Fed. R. Bankr. P. 1017(e)(1), a creditor is afforded 60 days from the date of the 341(a) hearing to file a motion to dismiss under 707(b). This rule also provides that this 60-day limit can be extended for cause if the request is made before the time has expired. *Id.* In the present matter, Mr. Stevens made two timely requests to extend the time to make a Code § 707(b) motion, but as the last deadline neared, he neither timely filed a motion for a further extension nor filed a Code § 707(b) motion. Though he did file the motion to dismiss, it was filed one day after the deadline, and, therefore, was untimely.

At first blush Fed. R. Bankr. P. 9006(b)(1) appears to aid Mr. Stevens as it states:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made

3

> before the expiration of the period originally prescribed or as extended
> by a previous order or (2) on motion made after the expiration of the
> specified period permit the act to be done where the failure to act was the
> result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

However, the explicit reference in Rule 9006(b)(1) to Rule 9006(b)(3) forecloses that possibility. Rule 9006(b)(3) states in pertinent part: "The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, only to the extent and under the conditions stated in those rules." Fed. R. Bankr. P. 9006(b)(3).

No doubt recognizing that no relief may be had for the untimely filing of the Code § 707(b) motion in either the Bankruptcy Code or Rules, Mr. Stevens and his client ask this court to employ the equitable tolling doctrine to stay the running of the time limitation for his motion, relying on *Young v. U.S.*, 535 U.S. 43, 49 (2002). The court in *Young* noted that "It is hornbook law that limitation periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute." (citations omitted) The Court in *Young* further stated that "Congress must be presumed to draft limitation periods in light of this background principle," and "that is doubly true when it is enacting limitation periods to be applied by bankruptcy courts, which are courts of equity." *Id.*, 49-50 (citations omitted). The Third Circuit has recognized that equitable tolling may be appropriate in the following circumstances, though not exclusive: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3rd Cir.1994). The Third Circuit also has noted that equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair," which generally occurs when the petitioner has "in some extraordinary way... been prevented from asserting his or her rights." *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3r Cir. 1998).

Here, Mr. Stevens contends that on January 27th, Ms. Fortunato misrepresented to him that the Chapter 7 case would be converted to a Chapter 13 case, thereby lulling him into a false sense of cooperation. The court understands this alleged misconduct by Ms. Fortunato to be what prevented Mr. Stevens, prior to the expiration of the deadline, from either filing a motion to extend the deadline or filing a § 707(b) motion. However, this contention is not persuasive when considered in the context of the events that occurred as the January 28th deadline neared. Mr. Stevens was sufficiently concerned on January 23rd about the imminent deadline to inquire whether conversion would occur without him needing to make a motion. In the court's mind Ms. Fortunato's reply on January 27th stating that she had been retained to convert the debtor's case, required further inquiry from Mr. Stevens. In fact, Mr. Stevens did inquire whether Ms. Fortunato would file a motion to convert by the January 28th deadline. Ms. Fortunato's response, also on January 27th, plainly stated that she was not certain that the motion could be filed by the deadline. Thus, on January 27th, Mr. Stevens had three choices: 1) file a motion to extend the deadline; 2) file a Code § 707(b) motion; or 3) wait to see if the Debtor's conversion motion was filed. He chose the last approach. No motion was filed, and it appears that in that same time period the Debtor chose to retain new counsel.[1] Thus, it does not appear to the court that it was Ms. Fortunato's conduct that caused the deadline to lapse. She made no representation that she could accomplish the conversion by the deadline. In fact, her response indicated that it was unlikely. Counsel for Ms. Malkin clearly knew the importance of the deadline as he previously sought two extensions of the deadline, and as the January 28th deadline approached he was sufficiently concerned to make inquiry of Ms. Fortunato on January 27th. With the benefit of electronic case filing, counsel could have easily timely filed with the court either a motion to extend the deadline or a Code § 707(b) motion on January 27th. In short, the court does not find that Mr. Stevens and his client have established extraordinary circumstances that warrant the use of the equitable tolling doctrine.

---

[1] No explanation of the basis for this change of counsel has been sought or offered, and the court accordingly does not consider this fact in its decision.

5

In addition, this court is not convinced that the equitable tolling doctrine should be applied to Rule 1017(e). The analysis provided in *Anwar v. Johnson*, 720 F. 3d 1183 (9th Cir. 2013) with regard to Rule 4007(c) is persuasive. In that case, creditors seeking to challenge dischargeability under § 523(a) missed their deadline to file a complaint by a mere half hour. In assessing whether the bankruptcy court has the equitable power to extend the deadline, the Ninth Circuit noted that Rule 9006(b)(3) states that the deadlines under Rule 4007(c) can be extended only to the extent and under the conditions stated in Rule 4007(c), and that "[t]his requirement distinguishes Rule 4007(c)'s deadline from most others set by the bankruptcy rules, which bankruptcy courts may extend at any time upon a showing of good cause or excusable neglect." *Id.* at 1187. Moreover, the court pointed out that the bankruptcy court can only exercise its equitable powers within the confines of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *Id.* As Rule 1017(e) is also subject to Rule 9006(b)(3), this court concludes that it is likewise not able to employ its equitable powers to toll the deadline in the matter before it. Moreover, as stated by the Supreme Court, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992). Furthermore, in *Kronz,* the Court stated that the trustee could have sought a hearing on the debtor's exemption claim or sought an extension of the deadline for objection, but having done neither, the trustee could not deprive the debtor of her exemption. *Id.*

## CONCLUSION

For the reasons stated above, Ms. Malkin's motion to dismiss the debtor's case pursuant to Code § 707(b) is denied as untimely.

Very truly yours,

*Novalyn L. Winfield*

NOVALYN L. WINFIELD
United States Bankruptcy Judge